UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| TERRENCE B. HUTCHINS, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 18-cv-3033 (APM) |
| EXECUTIVE OFFICE OF THE UNITED STATES ATTORNEYS, | ) ) ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM OPINION**

**I.   INTRODUCTION**

Plaintiff Terrence B. Hutchins, a federal prisoner appearing *pro se*, brought this action under the Freedom of Information Act ("FOIA") to compel production of certain grand jury information from the Executive Office for United States Attorneys ("EOUSA"), a component of the Department of Justice ("DOJ"). Defendant moves for summary judgment and proffers in support the declarations of Theodore B. Smith, Def.'s Mot. for Summ. J., ECF No. 18, Decl. of Theodore B. Smith, ECF No. 18-2; Reply in Further Supp. of Def.'s Mot. for Summ. J., ECF No. 23, Suppl. Decl. of Theodore B. Smith, ECF No. 23-1 [hereinafter Suppl. Smith Decl.]; and the declaration of Margaret Saxon, ECF No. 18-3 [hereinafter Saxon Decl.]. The court will grant Defendant's motion for the reasons explained below.

**II.   BACKGROUND**

Plaintiff is serving a life sentence as a result of a 1996 drug conspiracy conviction in the United States District Court for the Southern District of Florida. *See United States v. Hutchins*, 625 Fed. App'x 509, 509–10 (11th Cir. 2015). In 2018, Plaintiff requested from EOUSA "the

actual [d]ates that a Grand Jury was impaneled in session" with respect to his criminal case. Compl., ECF No. 1, Ex. A-1.  On June 12, 2018, EOUSA categorically denied Plaintiff's request, citing FOIA Exemption 3 and Federal Rule of Criminal Procedure 6(e).  *Id.*, Ex. A-2; *see* Suppl. Smith Decl. ¶ 9 ("Based on Exemption (b)(3) and Fed. R. Crim. P. 6(e), and applying the law of the D.C. Circuit under [*Murphy v. Exec. Office for U.S. Attorney*, 789 F.3d 204 (D.C. Cir. 2015)], I denied the plaintiff's request . . . without requesting the United States Attorney's Office for the Southern District of Florida to search for responsive records.").

In his appeal to DOJ's Office of Information Policy ("OIP"), Plaintiff contended that he "requested only the dates on which the two grand jury's [sic] convened, including the starting and ending dates for the grand jury's term and the grand jury number."  Compl., Ex. A-3 at 2.  Plaintiff cited *Fowlkes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 67 F. Supp. 3d 290 (D.D.C. 2014), asserting that EOUSA had "released the exact information" in *Fowlkes*.  *Id*.  On August 15, 2018, OIP affirmed EOUSA's denial of Plaintiff's "request for access to the dates that the grand jury was empaneled in [his] criminal case in the United States Attorney's Office for the Southern District of Florida."  *Id.*, Ex. A-4.

Plaintiff initiated this civil action on December 18, 2018.  *See* Compl.  Thereafter, Defendant searched for responsive records but located none.  *See generally* Saxon Decl.

### III. LEGAL STANDARD

"FOIA cases are typically and appropriately decided on motions for summary judgment." *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009).  FOIA requires a federal agency to release all records responsive to a properly submitted request except those protected from disclosure by nine enumerated exemptions.  *See* 5 U.S.C. § 552(b).  The court may  "enjoin [a federal] agency from withholding agency records and [ ] order the production of any agency records improperly

withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). An inadequate search can constitute an improper withholding. *See Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) ("An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." (internal quotation marks and citation omitted)). The district court reviews the agency's action *de novo*, and "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B).

Summary judgment in a FOIA case may be based solely on information provided in an agency's supporting affidavits or declarations if they are "relatively detailed and nonconclusory." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks and citation omitted). The agency's affidavits or declarations must "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and . . . not [be] controverted by either contrary evidence in the record [or] by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see Beltranena v. Clinton*, 770 F. Supp. 2d 175, 181-82 (D.D.C. 2011). An agency's "justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Murphy*, 789 F.3d at 209 (internal quotation marks and citation omitted). To "successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." *Span v. U.S. Dep't of Justice*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (quoting *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989)).

IV.     **DISCUSSION**

The parties spend much of their time disputing the meaning of Plaintiff's request for "the actual [d]ates that a Grand Jury was impaneled in session" with respect to his criminal case. *See* Compl., Ex. A-1.  Defendant interpreted Plaintiff's request as asking for "the dates the grand jury was actually in session or meeting," *see* Suppl. Smith Decl. ¶ 7, and declined to disclose such records based on the D.C. Circuit's decision in *Murphy*, which confirmed that Exemption 3 protects from disclosure the dates and times of day of grand jury sessions.  *See* Smith Decl. ¶¶ 8-11; *Murphy*, 789 F.3d at 211 ("Because disclosing the day-and-time information Murphy sought would tend to reveal the complexity and 'scope, focus and direction of the grand jury investigations,' that information is protected from disclosure by Rule 6(e) even if no disclosure of witness identity or risk of retaliation exists." (quoting *Fund for Constitutional Gov't v. Nat'l Archives and Records Serv.*, 656 F.3d 856, 869 (D.C. Cir. 1981)).  Plaintiff, however, challenges Defendant's reading of his FOIA demand.  He asserts that Defendant "intentionally mischaracterized" his request as asking for "the dates that the grand jury was actually in session or meeting," when his request was more modest and sought only "the date[s] 'that the grand jury was impaneled,'" which is information not protected by Exemption 3.  Pl.'s Opp'n to Def.'s Mot. for Summ. J., ECF No. 20 [hereinafter Opp'n], at 5.  Though the parties' semantic battle is an interesting one, the court need not resolve it.  Because EOUSA has shown that it performed an adequate search and located no responsive records, the court grants summary judgment on this alternative ground.

An agency seeking summary judgment bears the burden of showing that, even with the facts viewed in the light most favorable to the requester, the agency has conducted a search "reasonably calculated to uncover all relevant documents." *Weisberg v. U.S. Dep't of Justice*,

4

705 F.2d 1344, 1351 (D.C. Cir. 1983). "FOIA demands only a reasonable search tailored to the nature of a particular request," *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998), which "is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search," *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).

In response to this lawsuit, EOUSA's declarant, Smith, asked staff at the U.S. Attorney's Office in the Southern District of Florida—including grand jury coordinator Margaret Saxon in the West Palm Beach office that prosecuted Plaintiff—about "any" records regarding Plaintiff, and "specifically, a date or dates in 1995 when the grand jury that indicted him was empaneled or when it actually met." Suppl. Smith Decl. ¶ 14. In response to this inquiry, Saxon searched "all the places . . . reasonably expect[ed]" to locate responsive records, "specifically [the office's] assigned grand jury storage room, the filing cabinets contained therein, and [assistant U.S. attorney]'s offices." Saxon Decl. ¶ 12; *see id.* ¶ 9 ("I searched the locked room in the West Palm Beach branch [office] where grand jury records are kept and found no grand jury records relating to the plaintiff and no records of the empanelment or in-session dates of the grand jury that indicted the plaintiff in 1995."). In addition, Saxon spoke to the assistant United States attorney who prosecuted Plaintiff and was "advised . . . that no grand jury records relating to the plaintiff or records of empanelment or in-session dates of the grand jury that indicted the plaintiff remain in [her or his] possession or control." *Id.* ¶ 10.

Saxon "know[s]," moreover, that "records disclosing the date of empanelment of the grand jury ordinarily are not kept in criminal case files, and [ ] when criminal case files are prepared for shipment to the Federal Records Center in Atlanta, Georgia, they are purged of all grand jury records, including grand jury subpoenas and any other records that might disclose the date or dates

on which the grand jury met in connection with a case." *Id*. ¶ 11.  She cites the office's "official policy regarding retention of grand jury records," which requires that original grand jury transcripts be "maintained in a secure area for . . . ten years," and that original grand jury notes be "retained for a period of five (5) years.  After the respective periods of retention have passed, original notes and original transcripts are to be destroyed." *Id*. ¶ 7.  Finally, Saxon confirms that the retention policy applies to "grand jury logs, which are the lists the [United States Attorney's Office] maintains of the dates a grand jury met and the witnesses scheduled," and those logs "are routinely destroyed . . . no more than" ten years "after the dismissal of the grand jury in question." *Id*. ¶ 8.  The grand juries that indicted Defendant were convened decades ago, so Saxon's failure to locate responsive records after a reasonably calculated search is neither surprising nor untenable.

Nonetheless, Plaintiff questions why Saxon did not search the Legal Information Network Systems, or LIONS, database for responsive records "to determine (1) if Plaintiff is within the [Southern District of Florida] regarding the subject matter of the request; (2)  if the requestor is Plaintiff; (3) if the case is active or closed; and (4) the [assistant U.S. attorney] to whom the matter of the request is assigned."  Opp'n at 14.  He surmises that the LIONS database "would have assessed . . . the original indictment, and the Grand Jury Cover Sheet (Grand Jury Form DC 53)[,] which indicates the date" the grand jury was impaneled, "because the original [date] of the grand jury form DC 53 is readily maintained by Clerk of the Court[.]" *Id*. at 15 (parenthesis in original).  Plaintiff, however, offers no reason why a search of LIONS is reasonably likely to have turned up the "DC 53" that Saxon's otherwise diligent search did not.  When tailoring a search to a particular request an "agency has discretion to confine its inquiry to a central filing system if additional searches are unlikely to produce any marginal return; in other words, the agency generally need not 'search every record system.'" *Campbell*, 164 F.3d at 28  (quoting *Oglesby v. U.S. Dep't of*

*Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).  Saxon searched the locations where dated grand jury records relating to Plaintiff would most likely be found.  Absent reason to suspect that such records would be found in the LIONS database—and this record contains no such reason—Saxon was not required to search the database.

In short, EOUSA's "reasonably detailed" declarations, *Oglesby*, 920 F.2d at 68, demonstrate a calculated search for decades-old records containing the requested grand jury information at the locations where they were most likely to be found.  Such declarations are afforded "a presumption of good faith, which cannot be rebutted by [Plaintiff's] purely speculative claims about the existence and discoverability of [agency] documents." *SafeCard Servs., Inc.,* 926 F.2d at 1200 (internal quotation marks omitted).

## V.   CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted. A separate final order accompanies this Memorandum Opinion.

Dated: May 19, 2020

Amit P. Mehta
United States District Judge